Good morning. May it please the Court. Good morning, Counsel. I'm Elizabeth Olsen-White on behalf of the United States. If I remember, I'm going to try to save two minutes for rebuttal, but I'm not used to going first, so we'll see how that goes. In 2004, this Court in United States v. Matthews held that burglary of an occupied building in violation of Nevada law is not a crime of violence under the residual clause of Guideline 4B1.2. And in reaching that holding, this Court relied on a two-step analysis. Three years later, in United States v. James, the United States Supreme Court explicitly rejected both steps of the analysis that this Court had adopted in Matthews. Now, that was about a different Florida statute, and the Supreme Court didn't mention Matthews specifically, but the similarities between the analysis this Court adopted in Matthews and the analysis the Court rejected in James is striking. So since then, this Court has repeatedly and correctly applied the analysis in James and has done so making statements that make clear that the analysis the Court adopted in Matthews is no longer valid. But what it hasn't done, and I think it just hasn't had the opportunity to do, is to explicitly say that Matthews is no longer good law. And as a result, you've got district court judges in Nevada who understandably feel bound to apply Matthews. Counsel, is the government relying only on a categorical analysis here? Are you relying on a modified categorical? Modified categorical residual clause. Are you relying on both, or are you relying on just one or the other? Modified categorical. Okay. But then what does Matthews have to do with this? If Matthews was – I understood you to say that Matthews, we said that the Nevada statute was not a crime of violence. That would be a categorical judgment. Modified categorical analysis puts this into the record, trying to figure out whether some gaps in the statute can be filled through things on the plea or the indictment  Right. But what I'm saying – so the analysis, what the court did in Matthews is first – it's a two-step analysis. First, it hypothesized a case. It said, imagine a burglar breaks into a shop in a summer resort town on the off season. In a case like that, it would be virtually impossible for him to encounter someone inside. And then based on that hypothetical, the court said step two. Because although many – although some burglaries of occupied buildings Right. That's a categorical analysis. That's not a modified categorical analysis. Well, it's a categorical analysis, although in this case, we have this difference with the Nevada law not requiring unlawful entry, and so we actually have to go to Right. That would be a modified categorical analysis.  Which do you want us to do? We could do both. I mean, in this particular case, we go to modified because in this particular Then that doesn't require us to overrule Matthews, even if we think it's wrong. If you have to go to the record, you have a modified categorical analysis, and it doesn't matter whether we think that Matthews is correct or not, because you've got a gap in the statute. Okay. Well, we'll start with categorical then. I mean, I think the point being is that You've never argued that, isn't that correct? You've argued only categorical. No, we do. We talk about the fact that although the second part of the government's brief talks about the fact that Nevada's burglary statute does not have the unlawful entry element. That's categorical. That's not modified categorical. But in this case If you don't have an element in the statute, then you have got no argument whatsoever that Nevada's burglary statute categorically is categorically covered. That means that a mere conviction for burglary in Nevada will not satisfy the standards. Okay. So the only thing you've got left then is a modified categorical. It's modified categorical, right. Because in this That's all you've got left. Okay. And in this case, we have the defendant charged with and pleading guilty to unlawfully entering an occupied building with the intent to commit larceny. And what this Court has in applying James, I mean, I think that what the reasoning that the Court used in Matthews, and maybe I'm just, you know, maybe to the extent that that's categorical, it doesn't need to be specifically overruled here, but I think that what Matthews said is that because someone in violation of Nevada law, because we can hypothesize a case where a burglar can enter a building with an occupied building with intent to commit larceny in a way where they're unlikely to be encountered by someone inside, we therefore cannot say that it's a crime of violence under the guideline. And that's the reasoning that this Do I understand that your contention is that, for example, in the two charges that we had, the attempted burglary and the burglary, that the indictment says that he willfully, unlawfully, and feloniously entered these occupied structures. Entered one, attempted to enter the other. Right. And because he feloniously entered that, that that cures any deficiency in the Nevada statute. Because he unlawfully entered. Okay. Yes. Yes. This case, I know that you've cited agula de montes throughout your argument. Does the government have a view as to whether the recent argument, I believe it was last week in Descamps in the Supreme Court, is going to affect this judgment? It will be very curious to see. I read the oral argument from that case, and I'm going to be eager to Isn't there reason to hold this case until the Supreme Court decides that? It might make sense to do that. I mean, I think depending on how broadly the court decides to go in Descamps, I mean, I read that oral argument as demonstrating a whole lot of frustration on the part of a whole lot of the justices. And so they might make a broader, you know, they might sort of make a broad pronouncement on that. Although in this case, you know, we're looking at modified. I mean, we're looking at what he was charged with and pleaded guilty to, but we're also looking at the residual clause. Right. So we're not trying. I mean, our argument isn't that this constitutes burglary. Our argument is that this constitutes conduct that presents a serious potential risk of injury to another. And that's what, you know, what this Court said in Terrell is that the Supreme Court and this Court have consistently held that burglary involves conduct that presents a serious potential risk of physical injury to another, even in cases where the relevant State statutes were missing elements of generic burglary. Now, here we've got unlawful entry into an occupied building, and that is conduct that presents a serious potential risk of injury to another. In terms of the Montes de Oca and the unlawful entry, I mean, we make the point and we understand how this Court has interpreted California courts' cases interpretation of the Nevada burglary statute, and we just point out that the Nevada burglary statute, although the words are the same, are very, very similar, I think. You know, Nevada specifically does distinguish burglaries in which the entry is lawful from burglaries in which the entry is unlawful by means of this other statute that creates a presumption of intent to commit larceny where the entry is unlawful. That's the 205-065? Yes, yes. And so in there, I mean, if you were to interpret Nevada's, which you don't have those State cases that this Court interpreted on the California side, if you were to adopt that same kind of analysis of the Nevada statute, this presumption statute would be an absurdity. I mean, it would be a circular. If you can, if unlawful entry every time you enter with intent to commit a crime, but if you can presume unlawful entry from intent to commit, you know, or presume intent to commit a crime from unlawful entry, then you're just kind of going around in a circle. So in this case, you know, because you don't have that nuanced, non-generic understanding of unlawful that this Court has interpreted the California burglary statute to contain, what you're left with is sort of the usual common-sense understanding of what unlawful means. And that's what this Defendant pleaded guilty to. I'd like to reserve my time. Thank you. Mr. Rasmussen. May it please the Court. My name is Chris Rasmussen. I represent Brian Heiser. The government relies quite a bit on the James case. And I think the holding that they rely on in the James case is not actually the holding. It's dicta. If you look at Begay, the concurring opinion is written by Justice Scalia. Justice Scalia makes a point of talking about the James case, stating that James has very limited application to the circuits. And I think the government is hopeful that this Court will overturn the Matthews decision. Yeah, James, James, the argument I thought shifted just a little bit. I think the government appears to be less concerned now about overruling Matthews than it does getting to a modified categorical analysis. So maybe you should focus on that. Thank you. The trial judge in this case was Judge, Honorable Judge Dawson. He was a, if you look through the record, he does a quite thorough, some thorough findings regarding his time on the bench as a state judge where he handled many burglary cases and he talked about them. He's concerned that Nevada will, as California does, will take simple shoplifting and classify it as a burglary. Judge, that's exactly what happens. That's the majority of cases, and that's what the judge says. And the judge outlines an example of the suspect enters the store that's occupied, steals an item, and then the police come to the scene. They say, hey, did you intend it when you came in the store? And the person says, the suspect said yes, and then the police book him as burglary. So it's almost an after effect, this burglary. When the police are actually coming there for a petty larceny, they get the suspect to confess, and that's what Judge Dawson talks about in his findings. And I think he's correct. And if you look at the two informations closely that involve Mr. Heiser, the ones he pled guilty to, it's unclear whether this was a store in both the informations and whether the person named that was occupied, whether that was the store clerk. And that was the problem that Judge Dawson found and why he ruled in my favor. But, you know, but doesn't the government get around the shoplifting problem because the indictments in the two cases for burglary and attempted burglary both state that he feloniously entered, and that would not be – that would not cover your shoplifting. And Nevada does have this other statute, the .065 statute that discusses felonious or unlawful entry. And I think Judge Dawson clarified that. He talks about when you cross the threshold of the 7-11 or the convenience store, it's your mental state when you cross that threshold that can be felonious. And you think that would be covered under the 065? That is the 065. And what happens in cases – the 065 is more of a defense statute where you can put your client on the stand and they can testify, yeah, I had wire cutters in my back. They're not burglary tools. I'm an electrician. And that's what they can testify to rebut this unlawful entry. But every burglary in Nevada, if you cross – once you cross the threshold – Well, I understood that as part of the regular burglary statute, which is the 060. But I thought that the 065 had to do with an inference of burglarious intent. That's a funny title to the statute. But it talks about unlawfully breaking and entering or unlawfully entering. And then it says may be inferred to have broken and entered. And I don't think that the – even if the burglary statute covers shoplifting, this statute seems to suggest that there is something different about unlawfully breaking and entering or unlawfully entering that wouldn't – that wouldn't be covered by the shoplifting example. And I think – do you have any cases from the Nevada courts that suggest that the 060 covers the shoplifting example? There is no case. And that's where Judge Dotson – I think that's where he tries to make his finding that there is no case. But Judge Dotson was referring to the burglary statute. Exactly. I'm sorry, which is the 060, not the 065. That's correct. And if – and what he says is every case that came before him as a State court judge alleged both the 060 violation and the 065. They're part and parcel in every burglary case in Nevada. There's no case where they just cite one or the other. They come together in every case. So in the information, they're in every information that everybody pleads guilty to. And I think Judge Dotson correctly found that it wasn't enough to – to meet the necessary qualification to enhance Mr. Heiser's sentence. Is it your understanding that the government argued the modified categorical approach on appeal? You know what? I thought I understood what they argued until we came here, until we just started arguing. I thought that's what they were arguing, the modified categorical approach. And then – and I thought my understanding was they were trying to ask this court to overrule Matthews. But that's a categorical approach rather than modified, no? You are correct. And so I'm not sure what the government's position is now. And Judge Bybee has corrected me on that, and he thinks that they're shifting gears here today. But I – but they haven't – don't they have to write that in their briefs? I think that's for you guys to decide. I would – I would assume so. Did you look at – at anything concerning the Scamps case that was argued last week in the Supreme Court? I wish I could say I was that prepared. I've never even heard of that case, to be honest with you. Okay. Thank you, and I'll submit it. Okay. Is the – is the – is counsel correct that Judge Dawson thought that the 0.065 was a part of every burglary case in Nevada? No, there was no discussion about 0.065 at all in the sentencing hearing. And I just looked at the record. These two – these two indictments against this defendant, neither one references 0.065. But it would have been very logical in that case, wouldn't it, to have referenced 0.065 because it was a colonial sentry. Yes. Yes. Yes. It could have been. I mean, I think that – What do we take from the fact that neither of those indictments mentioned 0.065? I don't. I'm not sure that – 0.065 is a – is a statute that creates a permissive presumption, I mean, that allows the jury – doesn't require, but allows the jury to make a presumption. I don't know that that statute would have to be charged in an indictment. You don't think it gets charged separately? Maybe it's instructed, but not – I would think that it would be more of a jury instruction than a charge. It don't violate 0.062. Right. Right. It's a presumption. It's a presumption. The – just three points that I'd like to make very quickly. In looking at Matthews, you know, Matthews, there was a whole lot of discussion about the fact that the indictment had charged that the defendant entered an occupied building. So there was a lot of discussion about what occupied meant and the different things that occupied meant. I read that as Matthews using the modified categorical analysis, and I think that's why I was sort of taking that same tack. I'm not sure that Matthews, the decision, distinguishes about whether it's doing modified or plain categorical, but it does spend a significant amount of time discussing specific languages in the indictment. And so I would assume that that means modified categorical. Unless the Court has any questions, I see I'm out of time. Okay. Thank you. Thank you. All right. The Court is going to do two things right now. First, we're going to take a brief recess. Secondly, when we come back, we are going to switch the order on the last two cases. So we'll hear the NRDC case before we hear the Keifel case on the last two cases. We'll take about a ten-minute recess. All rise.
judges: Adelman, Farris, Bybee